■ MARY ELLEN NUGENT-SCHUBERT, Respondent, v PAUL JOHN SCHUBERT, Appellant. [931 NYS2d 642]—

The plaintiff former wife and the defendant former husband were divorced by judgment incorporating a stipulation of settlement. The stipulation of settlement provided for a 50% distribution to the plaintiff of the value of "any pension" received by the defendant. The plaintiff thereafter submitted to the Supreme Court a qualified domestic relations order (hereinafter QDRO), which included a provision entitling her to receive a share of any future disability pension, but limited to any portion thereof representing the defendant's earnings and years of credited service. However, the Supreme Court struck that provision of the QDRO. Subsequently, the defendant, who was employed by the New York City Police Department, retired on an accidental disability pension as a result of a line-of-duty injury. It is undisputed that pursuant to the QDRO in its current form, the plaintiff is receiving a portion of the defendant's accidental disability pension that represents compensation for personal injuries. The defendant moved to amend the QDRO so as to exclude this portion of his accidental disability pension from distribution to the plaintiff.

"Where a QDRO is inconsistent with the provisions of a stipulation or judgment of divorce, courts possess the authority to amend the QDRO to accurately reflect the provisions of the stipulation pertaining to the pension benefits" (*Berardi v Berardi*, 54 AD3d 982, 985-986 [2008]; *see Condon v Condon*, 46 AD3d 596, 598 [2007]). " 'A proper QDRO obtained pursuant to a stipulation of settlement can convey only those rights to which the parties stipulated as a basis for the judgment' " (*Condon v Condon*, 46 AD3d at 597, quoting *McCoy v Feinman*, 99 NY2d 295, 304 [2002]).

Under controlling law, pension benefits, "except to the extent that they are earned or acquired before marriage or after commencement of a matrimonial action, constitute marital property" because they are "in essence, a form of deferred compensation derived from employment" during the marriage (*Dolan v Dolan*, 78 NY2d 463, 466 [1991]; *see Majauskas v Majauskas*, 61 NY2d 481, 490 [1984]). "However, any compensation a spouse receives for personal injuries is not considered marital

property and is not subject to equitable distribution" (*Dolan v Dolan*, 78 NY2d at 466; *see* Domestic Relations Law § 236 [B] [1] [d] [2]). Thus, " 'to the extent [a] disability pension represents deferred compensation, it is subject to equitable distribution' [while] '[t]o the extent that a disability pension constitutes compensation for personal injuries, that compensation is "separate property" which is not subject to equitable distribution' " (*Howe v Howe*, 68 AD3d 38, 40-41 [2009] [citations omitted]; *see Berardi v Berardi*, 54 AD3d 982 [2008]).

In *Berardi*, this Court interpreted a stipulation of settlement of a divorce action which contained similarly broad language as that contained in the instant stipulation. It provided for equal distribution of the husband's "pension" and "disability payment," without differentiating between the separate-property portion of any disability pension, and the portion representing deferred compensation. After the divorce, the husband was injured in the line of duty and retired under an accidental disability pension (*see Berardi v Berardi*, 54 AD3d at 984-985). This Court concluded that, "[a]bsent a provision in the stipulation specifically awarding the [wife] accident disability benefits," the Supreme Court had erred in amending the QDRO to award the wife a portion of the husband's pension representing compensation for personal injuries, as such a provision in the QDRO expanded the rights granted to the wife under the stipulation (*id.* at 986).

Similarly, here, the parties' stipulation providing for the distribution of "any pension," which was entered into before the defendant became entitled to or applied for an accidental disability pension, must likewise be construed to refer only to the portion of the defendant's pension representing deferred compensation. In this respect, the present case is distinguishable from this Court's decisions in *Rosenberger v Rosenberger* (63 AD3d 898 [2009]) and *Pulaski v Pulaski* (22 AD3d 820, 820-821 [2005]). In those cases, the husbands had applied for disability benefits, based upon line-of-duty injuries, prior to execution of the stipulation such that they were "chargeable with knowledge of the prospect of [an] eventual disability retirement when [they] entered into the stipulation" (*Pulaski v Pulaski*, 22 AD3d at 821; *see Rosenberger v Rosenberger*, 63 AD3d at 900). Thus, in *Pulaski* and *Rosenberger*, where the husbands were aware, before entering into a stipulation, of the specific potential for receipt of pension benefits that they would be entitled to treat as separate property, the broad language in the stipulation referring to distribution of a pension generally, with no provision for separate-property treatment of the pension, was rea-

sonably interpreted as intending to distribute the entire disability pension. Here, as in *Berardi*, where it was unknown and unanticipated that the defendant would qualify for a disability pension, there is no reason to conclude that a general provision providing for equal distribution of "any pension" was intended to opt out of the controlling law in order to distribute portions of any such pension that would not ordinarily be subject to equitable distribution. Indeed, the fact that the plaintiff submitted a QDRO which would have limited the distribution of any future disability pension to that portion representing deferred compensation further evinces the parties' understanding that separate-property portions of "any pension" received by the husband would not be subject to distribution.

Accordingly, the Supreme Court should have granted that branch of the defendant's motion which was to amend the QDRO so as to exclude from distribution to the plaintiff that portion of his disability pension that constitutes compensation for personal injuries, and we remit the matter for the entry of an appropriate amended QDRO. Skelos, J.P., Chambers, Sgroi and Miller, JJ., concur.